IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENNIS VAN HOUWELINGEN, *et al.*, : | Civil No. 1:22-CV-01388 |
| Plaintiffs, : | |
| v. : | |
| THE MILTON S. HERSHEY : MEDICAL CENTER, : | |
| Defendant. : | Judge Jennifer P. Wilson |

### **MEMORANDUM**

Before the court is the motion to strike objections and compel production of documents filed by Plaintiffs Dennis Van Houwelingen and Dian Maya Allo ("Plaintiffs"). (Doc. 27.) The motion asks the court to compel production of a PowerPoint presentation given during a "Grand Rounds" conference presentation on March 5, 2021. (*Id.*) Defendant Milton S. Hershey Medical Center ("Defendant") contends that this presentation is privileged material under the Pennsylvania Peer Review Protection Act ("PRPA"). Because the Grand Rounds presentation is privileged material, the motion will be denied.

### FACTUAL AND PROCEDURAL HISTORY

Plaintiffs filed their complaint on September 7, 2022, asserting two claims of negligence and one claim of loss of consortium against Defendant. (Doc. 1.) As alleged in the complaint, Plaintiff Dennis Van Houwelingen went to Defendant's emergency room on October 1, 2020 "with a history of a non-healing perineal

1

wound[.]" (Doc. 1, ¶ 17.) He was admitted to the hospital at this time, underwent various procedures, and was eventually discharged to a long-term acute care facility on October 13, 2020. (*Id.* ¶¶ 17–24.)

Van Houwelingen was admitted to Defendant's hospital again on November 11, 2020, because of "further complications from the repeated procedures" from his first hospital stay. (*Id.* ¶ 24.) In November 2020, Van Houwelingen underwent further procedures. (*Id.*) At some point during this hospital stay, "after the significant number of operative procedures and devastating complications without any progress, it was finally recognized that the healthcare providers involved in [Van Houwelingen's] care misdiagnosed his condition and the diagnoses of pyoderma gangrenosum (PD) was made[.]" (*Id.* ¶ 26.) After this diagnosis, Van Houwelingen's condition improved markedly, but he "continues to experience significant pain, discomfort, and disfigurement as a result of the misdiagnosis[.]" (*Id.* at ¶ 29.) Defendant answered the complaint on December 14, 2022, and discovery has been progressing since that time. (Doc. 12.)

On March 28, 2024, Plaintiffs filed the instant motion to compel discovery. (Doc. 27.) On April 27, 2023, Plaintiffs issued, as part of their discovery requests, an interrogatory asking whether "any aspect of this incident was the subject of a peer review investigation." (Doc. 27, ¶ 3.) Defendant objected to this request as privileged and produced a privileged log, identifying a presentation given at the

Defendant's Department of Dermatology's Grand Rounds conference. (*Id.* ¶¶ 4, 5.) Subsequently, on February 28, 2024, as part of Plaintiffs' supplemental request for production, Plaintiffs requested "a full copy of the Department of Dermatology's Grand Rounds PowerPoint presentation ("the PowerPoint") described in your response to Plaintiffs' April 27, 2023 Requests[.]" (*Id.* ¶ 12.) Defendant objected again, produced a more detailed privilege log, and produced portions of the PowerPoint in order to provide context for its objection. (*Id.* ¶¶ 13, 15.) After an attempt to resolve this issue between counsel, Plaintiffs filed the instant motion. (*Id.* ¶ 18.)

Defendant responded on April 11, 2024. (Doc. 34.) Plaintiffs filed a reply brief on April 25, 2025. (Doc. 35.) Subsequently, on August 7, 2024, upon initial review of the motion, the court ordered Defendant to produce *ex parte* under seal the entirety of the Grand Rounds PowerPoint at issue. (Doc. 48.) Defendant promptly complied, and the court has conducted an *in camera* review of the contested PowerPoint presentation. As such, the motion is ripe and ready for disposition.

## JURISDICTION AND VENUE

This court has jurisdiction under 28 U.S.C. § 1332 because the parties have complete diversity and the amount in controversy exceeds $75,000.[1]  Venue is appropriate pursuant to 28 U.S.C. § 1391 because all events occurred within the Middle District of Pennsylvania.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 26 outlines a party's duty to disclose and provides that a party is entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  A party may file a motion to compel when the opposing party fails to properly answer interrogatories or produce documents. Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv).  In addition to a failure to respond, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).  Furthermore, if a motion to compel is granted, the court must, with limited exceptions, order the party whose conduct necessitated the motion to pay attorney's fees and expenses to the party that incurred the costs. Fed. R. Civ. P. 37(a)(5).

---

[1] Plaintiffs are citizens of Texas, and Defendant has its principal place of business in Hershey, Pennsylvania, making it a citizen of Pennsylvania. (Doc. 1, ¶¶ 2, 3.)

4

The moving party bears the burden of demonstrating "the relevance of the information sought to a particular claim or defense." *Osagie v. Borough of State College*, 586 F. Supp. 3d 314, 321 (M.D. Pa. 2022). "The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper." *Id.*

## DISCUSSION

At the outset, the court notes that Plaintiffs' brief in support discusses three different privileges raised by Defendant in its responses and privilege log. (Doc. 28, p. 1.) However, in its brief in opposition, Defendant concedes that the only applicable privilege is the PRPA. (Doc. 34, p. 5 n.1.) Because Defendant only relies on this privilege, the court will only discuss the PRPA. Because this case sounds in diversity and arises under Pennsylvania law, the court will apply Pennsylvania privilege law to determine whether the material at issue is privileged. *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000).

In support of its argument that the Grand Rounds presentation is not privileged under the PRPA, Plaintiffs argue that the presentation's purpose is to 'educate the entire Dermatology department about Mr. Van Houwelingen's condition in some way. This is not 'peer review' within the meaning of the PRPA." (Doc. 28, p. 8.) Plaintiffs argue that Grand Rounds are educational in

purpose, shown by the fact that continuing medical education credits were offered, and that these presentations are "not evaluations of other providers' performance." (*Id.*)  Plaintiffs further argue that Grand Rounds "are not peer review committee meetings, or even limited to [Defendant's] medical staff [.]" (*Id.*)  Finally, Plaintiffs argue that "[i]t is well known that 'Grand Rounds' are not peer review organizations, meetings, or functions within the meaning of the PRPA, nor are they within the scope of [Defendant's] own Quality & Patient Safety Plain." (*Id.* at 10.)

Defendant first responds by arguing that the entirety of the Grand Rounds presentation is not relevant to the instant action because it contains an update from the dermatology department's clinical research team, updates on other patients, and resident expert talks, none of which relate to Van Houwelingen.  (Doc. 34, pp. 10–12.)[2]  On the substance of the PRPA, Defendant argues that the Grand Rounds presentation "reflect[s] the evaluation of professional health care providers by other health care providers, and [is] thus privileged." (*Id.* at 16.)  In support of this

---

[2] In their reply brief, Plaintiffs argue that Defendant's argument about relevance "misconstrues and misrepresents" Plaintiffs' request because Plaintiffs' proposed order requests only the slides relating to Van Houwelingen.  (Doc. 34, p. 2.)  While this is true, Plaintiffs' discovery request in its February 28, 2024, supplemental request asked for "*a full copy* of the Department of Dermatology's Grand Rounds PowerPoint presentation[.]" (Doc. 27, ¶ 12) (emphasis added).  Further, Defendant's objections and privilege log detail the entire presentation.  (Doc. 34, pp. 28–34.)  So, the confusion is understandable.  Because the court agrees with both Plaintiffs and Defendant that the portions of the Grand Round presentation not relating to Plaintiff are irrelevant, the court will only consider the portions relevant to Plaintiff, specifically bates-stamped pages 3564–91.  Accordingly, in any discussion of the "Grand Rounds presentation" *infra*, the court will be referring to only those portions dealing with Van Houwelingen.

statement, Defendant attaches an affidavit from Dermatology Department Chair Dr. Jeffrey Miller, who avers under oath that, Grand Rounds conferences "include presentation of patients, with a retrospective review of the care provided to those patients for the purpose of evaluating the quality and efficiency of health care services provided to those patients and improving the quality of health care." (*Id.* at 16.)  Defendant contends that the fact that Van Houwelingen's treating physicians prepared the materials at issue and participated in the conference while treating Plaintiff does not dictate a finding that the materials are outside the scope of the statue because nothing in the plain language of the PRPA prohibits either the participation of the treating doctor or peer review while the patient is still hospitalized.  (*Id.* at 17, 18.)  Defendants also contest Plaintiffs' assertion that Grand Rounds conferences cannot be peer review because they are educational by noting that Plaintiffs do not support this contention with case law or citation to the statute, and that nothing in the definition of "peer review" forbids an educational element.  (*Id.* at 18, 19.)  Finally, Defendant counters Plaintiffs' assertion that Grand Rounds are not commonly known as peer review organizations nor listed in Defendant's official documents as such by noting that Pennsylvania Supreme court precedent holds "that application of peer review protections requires evaluation of the review that is performed, not the title of the collection of individuals who

perform the review."  (*Id.* at 20) (citing *Leadbitter v. Keystone Anesthesia Consultants, Ltd.*, 256 A.3d 1164, 1178 (Pa. 2021)).

In reply, Plaintiffs argue that Defendant "attempts to untenably and unjustifiably expand what constitutes a committee and an alleged committee's proceedings and records."  (Doc. 35, p. 3.)  Plaintiffs contest the "self-serving" affidavit of Dr. Miller as failing to assert that the Grand Rounds conference is an "established" committee.  (*Id.* at 4.)[3]  Plaintiffs then argue that "[t]he claim that

---

[3] In advancing this argument, Plaintiffs ostensibly quotes the statute for the proposition that a review organization must be "established . . . to gather and review information relating to the care and treatment of patients for the purposes of (i) evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care."  (Doc. 35, pp. 3) (citing 63 PA. CON. STAT. § 424.2.)  However, in this quotation, Plaintiffs have omitted a significant portion of the definition provided by the statute which language contradicts their point.

The full text of the definition of "review organization" is as follows:
> "Review organization" means any committee engaging in peer review, including a hospital utilization review committee, a hospital tissue committee, a health insurance review committee, a hospital plan corporation review committee, a professional health service plan review committee, a dental review committee, a physicians' advisory committee, a veterinary review committee, a nursing advisory committee, any committee established pursuant to the medical assistance program, and any committee established by one or more State or local professional societies, to gather and review information relating to the care and treatment of patients for the purposes of (i) evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care. It shall also mean any hospital board, committee or individual reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto. It shall also mean a committee of an association of professional health care providers reviewing the operation of hospitals, nursing homes, convalescent homes or other health care facilities.

63 PA. CON. STAT. § 425.2.  The language cited by Plaintiffs refers to one type of committee in a list of types of committees, and it cannot be seen as a requirement for all committees. The definition first provides that a review organization means "*any* committee engaging in

any conference of healthcare professionals constitutes a peer review committee for a specific hospital defies the purpose of the PRPA in an attempt to shield *any* discussion of patients from discovery." (*Id.*)  Finally, Plaintiffs argue that the PowerPoint cannot be proceedings or records of an evaluation of professional healthcare providers because the PowerPoint was "created prior to the Conference, and there is no evidence in Dr. Miller's Affidavit that they were created at the direction of a peer review committee or for anything besides presenting their clinical findings." (*Id.* at 5.)

The Pennsylvania Peer Review Privacy Act was enacted with the purpose of "foster[ing] candor and frankness in the creation and consideration of peer-review data by conferring immunity from liability, as well as confidentiality–all with the objectives of improving the quality of care, reducing mortality and morbidity, and controlling costs." *Leadbitter*, 256 A.3d at 1169.  Accordingly, the PRPA, in relevant part, provides:

> The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider

---

peer review," then proceeds to non-exhaustively list various possible committees, including "any committee established by one or more State or local professional societies." Therefore, reading the text plainly, the committees which must be "established" are those established by state or local professional societies.  Being "established" is not a requirement of review organizations generally.  Rather, review organizations are "*any* committee engaging in peer review."  Further, as explained in more detail below, this interpretation of "review organization" in not in accordance with the definition provided by the Pennsylvania Supreme Court in *Leadbitter*, 256 A.3d at 1178.

arising out of the matters which are the subject of evaluation and review by such committee [.][4]

63 PA. CON. STAT. §425.4.  The PRPA does not define "review committee," but it does define a "review organization."  A "review organization" is "any committee engaging in peer review[.]" *Id.* § 425.2.[5]  Peer review is defined as "the procedure for evaluation by professional health care providers of the quality and efficiency of services ordered or performed by other professional health care providers[.]" *Id.*

While all aspects of the statute may not be crystal clear, the Pennsylvania Supreme Court recently held that "a committee which performs a peer-review function, although it may not be specifically entitled a 'peer review committee,' constitutes a review committee whose proceedings and records are protected under Section 4 [§ 425.4] of the act." *Leadbitter*, 256 A.3d at 1177.  The Court explained that this construction of § 425.4 comports with the PRPA's definition of "review organization" because that definition "subsumes '*any* committee engaging in peer review,' and nothing in either that definition or in *Reginelli*[6] suggests the

---

[4] This section also provides a testimonial privilege to any "person in attendance at a meeting of such committee[.]"  Finally, § 425.4 does not protect "information, documents or records otherwise available from original sources . . . merely because they were presented during proceedings of such committee[.]"  § 425.4.

[5] The court notes that the definition, quoted in its entirety above in footnote 3, goes on to list eleven non-exclusive examples of types of review organizations.  *See Leadbitter*, 256 A.3d at 1176.

[6] Prior to *Leadbitter*, *Reginelli v. Boggs*, 181 A.3d 293 (Pa. 2018), was the lead case on the PRPA's definition of "review organization."  Relevant to the instant case, *Reginelli* held that "[i]ndividuals conducting peer review are not defined as a 'review committee' under the PRPA,

10

committee must engage *exclusively* in peer review to qualify as a review committee. It follows that a hospital's credential committee[7] enjoys such protection if (and only if) it engages in peer review." *Id.* at 1177. The Pennsylvania Supreme Court has further opined that a hospital's "by-laws are not required to specify which committees undertake peer review or evaluate peer review documents." *Id.* at 1175.

Thus, the ultimate question before the court is whether the portion of the Ground Rounds PowerPoint presentation relating to Van Houwelingen is a proceeding or record of a review committee, such that it is entitled to protection under the PRPA. In order to resolve this question, the court must consider whether the Grand Rounds conference at which the PowerPoint was presented is a "review committee." To make this determination, the court relies on the text of the statute defining review organization and peer review, as well as the definition provided by *Leadbitter* that "a committee which performs a peer-review function, although it may not be specifically entitled a 'peer review committee,' constitutes a review

---

even if they qualify as another type of 'review organization.'" *Reginelli*, 181 A.3d at 306. As discussed above, *Leadbitter* has since refined the understanding of *Reginelli* and provided protection to the proceedings and records of "a committee which performs a peer-review function[.]" *Leadbitter*, 256 A.3d at 1177.

[7] The hospital's credential committee was the type of committee at issue in *Leadbitter*. The Court reasoned that a hospital's credentials committee "is really a specialized quality assurance committee, charged with assuring the competence of physicians authorized to practice at [the hospital]." *Leadbitter*, 256 A.3d at 1177.

11

committee whose proceedings and records are protected under Section 4 of the act." *Leadbitter*, 256 A.3d 1177.

After *in camera* review of the contested PowerPoint and the materials provided by the parties, the court is persuaded that the portion of the Grand Rounds conference that focused on a review of patient care was performing a peer-review function, making the Grand Rounds conference a peer-review committee at this time. First, the affidavit of Dermatology Department chair Dr. Jeffrey Miller states that the Grand Rounds Conferences are "open solely to professional health care providers, both from [Defendant] and outside the hospital." (Doc. 34, p. 36.)[8] Further, Dr. Miller avers that the purpose of the patient discussion section is to "evaluat[e] the quality and efficiency of health care services provided to those patients and improv[e] the quality of health care." (*Id.* at 37.) Dr. Miller avers that "[t]he purpose of [the] slides is to facilitate candid discussion at the Grand Rounds, with the goal of evaluating the care provided to the patient by other professional health care providers and improving care provided to future patients." (*Id.*) Accordingly, the evidence supports a finding that the patient discussion portions of the Grand rounds conferences are meant to be a time when professional health care

---

[8] The court notes that Plaintiffs contest this affidavit as "self-serving." (Doc. 35, p. 4.) The court recognizes that this is the sworn testimony of the chair of the Defendant's Dermatology Department. However, the court will not automatically discount statements given under oath without a specific explanation as to why the statements are, in fact, self-serving and not credible.

12

providers can assess and critique the care provide by other professionals. This is squarely within meaning of "peer review." 63 PA. CON. STAT. § 425.2. Plaintiffs' contrary bald assertions that "everyone knows" Grand Rounds conferences are purely educational is not supported by the evidence presented or cited authority.

Second, the court's *in camera* review of the presentation also leads to the conclusion that the Grand Rounds conference was engaging in peer review during this portion of the conference. While the purpose of the clinical research update and the resident expert talks portions of the conference were for sharing information or educating the audience, the patient discussions were for the purpose of peer review. The multiple purposes of the Grand Rounds conference do not negate the fact that, at the time the conference was discussing patients, they were engaging in peer review as defined by the statute and *Leadbitter*.

Further, each discussion of a patient was structured in the same way, with one portion which can be described as "what to do" and another section which can be described as "takeaways." The structure of these discussions demonstrates that their purpose was to evaluate the quality and efficiency of the services provided by the professional healthcare providers presenting the information and improve the quality of care given to future patients by virtue of educating the healthcare providers listening. Moreover, the patient discussions show the trajectory of diagnosis and treatment of each patient, which also establishes that the purpose of

these discussions was to engage in peer review by evaluating the services provided to each patient and improving the quality of care for other patients through teaching other professionals. This fits squarely within the text of the PRPA, as well as within its purposes of improving health care quality, reducing morbidity and mortality, and lowering costs. Thus, the PRPA protects the proceedings and records of the portion of the conference engaging in peer review, namely the discussion of Van Houwelingen.

Finally, after a review of case law applying the PRPA, the court finds that the Grand Rounds presentation here is akin to those cases which hold that event reports, root cause analyses, and meeting minutes are protected under the PRPA because they were created for the purpose of reviewing care provided by a healthcare professional. *Corrigan v. Methodist Hosp.*, 885 F. Supp. 127, 127 (E.D. Pa. 1995) (holding that quarterly staff meeting minutes were protected by PRPA because part of the staff meeting was "acting to review the 'professional qualifications or activities of its medical staff or applicants for admission thereto.'"); *Brink v. Mallick*, No. 13 CV 1314, 2015 WL 13779516, at *5 (Pa. Com. Pl. June 5, 2015) (finding that root cause analysis and sentinel event report were protected under § 425.4 because they were "designed to improve the quality of behavioral health care at [facility], rather than to facilitate the investigation or defense of a prospective tort claim."); *Scrima v. UPMC Mercy*, No. GD-11-

019474, 2013 WL 10571865, at *3 (Pa. Com. Pl. Sept. 9, 2013) (holding that documents "generated for the purpose of evaluating the conduct of the medical staff and, if necessary, reeducating the staff regarding future procedures" was protected by PRPA); *Adriansen v. Marworth*, No. 01 CV 2633, 2007 WL 5007259 (Pa. Com. Pl. June 18, 2007) (finding root causes analysis of sentinel event "was indeed prepared for the purpose of peer review and is therefore deserving of protection under the PRPA"); s*ee also Glover v. Griffin Health Servs.*, No. X06CV055001692S, 2007 WL, 3173658 (Conn. Super. Ct. Oct. 11, 2007) (Superior Court of Connecticut finding that Grand Rounds presentation was protected by substantially similar Connecticut peer review privilege statute).

Accordingly, the portion of the Grand Rounds presentation pertaining to Van Houwelingen is protected by the PRPA and does not need to be disclosed by Defendant. The other portions of the presentation are irrelevant, as they do not deal with Van Houwelingen. Thus, Plaintiffs' motion will be denied.

## CONCLUSION

As discussed, the portion of the Grand Rounds PowerPoint discussing Van Houwelingen was created for the purpose of having professional health care providers evaluate the quality and efficiency of the services provided by other professional health care providers.  Thus, it is protected by the PRPA.  On this basis, Plaintiffs' motion to compel discovery will be denied.  An appropriate Order follows.

s/Jennifer P. Wilson  
JENNIFER P. WILSON  
United States District Judge  
Middle District of Pennsylvania

Dated: August 21, 2024